UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:17-cr-182-MOC |
| v. | ) | |
| | ) | |
| (1) ALEXANDER SAMUEL SMITH | ) | UNDER SEAL |
| a/k/a “Amir Alexander” | ) | |

**GOVERNMENT’S RESPONSE IN OPPOSITION TO THE DEFENSE MOTION TO STRIKE SURPLUSAGE AND PRECLUDE IRRELEVANT EVIDENCE**

Comes now, the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, who files this, the Government’s Response in Opposition to the Defense Motion to Strike Surplusage and Preclude Irrelevant Evidence (Motion to Strike). In this Motion, the Defense moves to strike paragraphs 1-12, 20, 21 and 23 of the Indictment. Motion to Strike at 1, 3-4. Because the Indictment returned by the Grand Jury contains only factual and relevant statements in these paragraphs that the Government will prove at trial, the United States respectfully submits that the Defense Motion to Strike should be denied in its entirety. In support of its position, the Government further shows the following:

## I. THE INDICTMENT

On June 21, 2017, the Grand Jury returned a Bill of Indictment against the Defendant, Alexander Samuel Smith, a/k/a Amir Alexander (SMITH), charging that he made two distinct materially false statements to federal agents conducting an investigation into whether he and others were planning to provide material support to the Islamic State of Iraq and al-Sham (“ISIS”), a designated foreign terrorist organization. Indictment at ¶ 1, 21 & 23. In Count One,

SMITH is alleged to have lied to federal agents about whether he had ever discussed his desire and plan to travel to Syria. *Id*. at ¶ 21. In Count Two, SMITH falsely stated that he did not know that he was facilitating the purchase of a discounted airline ticket for a person traveling to support ISIS. Id. at ¶ 23. Paragraphs 1 through 3 of the Indictment outline how SMITH initiated contact with a Government source posing as an ISIS sympathizer in order to facilitate his travel to Syria on the condition that he join and fight with ISIS—the subject of Count One. Paragraphs 4 through 11 of the Indictment explain how SMITH used his girlfriend's status as an airline employee to purchase a discounted employee airline ticket for a person he was told would be traveling from Tampa, Florida, to Buffalo, New York, in order to cross into Canada and then to Turkey and Syria to join and fight with ISIS—the subject of Count Two. Paragraphs 12 and 13 state that SMITH voluntarily drove himself to the FBI's offices in Charlotte, North Carolina after learning that his girlfriend—the airline employee who purchased the aforementioned ticket—was subpoenaed to the grand jury. Paragraph 20 alleges that: "[t]he circumstances surrounding SMITH's planned travel to Syria, his assistance to [the person who was to travel on the discounted airfare], and his interviews with FBI Special Agents within the United States are matters within the jurisdiction of the FBI and the executive branch of the United States Government." These introductory paragraphs are incorporated by reference into Counts One and Two by paragraphs 21 & 23.

## II. APPLICABLE LAW

Rule 7(d) of the Federal Rules of Criminal Procedure provides that, on motion by the defense, the Court may strike surplusage from an indictment. However, "Rule 7(d) has been strictly construed against striking surplusage." *United States v. Kemper*, 503 F.2d 327, 329 (6th

Cir. 1974). "The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (citing *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979)). "[A] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (cited with approval in Williams, 445 F.3d at 733).

This is a conjunctive test: surplusage may only be stricken if it is *both* irrelevant *and* prejudicial. "Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3rd Cir. 2006); *see also United States v. Scarpa*, 913 F.2d 993, 1013 (2nd Cir. 1990) ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." (citation omitted)).

Consequently, "[m]otions to strike surplusage are rarely granted" and "the scope of a district court's discretion to strike material from an indictment is narrow." *Id.* at 611-12 (citations omitted); *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990) ("This is a most exacting standard." (quoting Charles A. Wright, *Federal Practice and Procedure*, § 127 at 424 29 (1982)); *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971) (same); *United States v. Graves*, 2006 WL 3419836 (W.D.N.C. 2006) (Keesler, J.) ("Because the standard for surplusage is so exacting, only rarely is alleged surplusage stricken from an indictment").

The law is clear that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Climatemp, Inc.*, 482 F. Supp. 376, 391 (N.D. Ill. 1979) (cited with approval in *United States v. Sprouse*, 2009 WL 278836 (W.D.N.C. 2009) (Keesler, J.); *United States v. Pineda*, 2006 WL 785287, *13 (D. D.C. Mar 28, 2006) (same); *United States v. Hill*, 799 F. Supp. 86, 89 (D. Kan. 1992) (same); *United States v. Thomas*, 875 F.2d 559, 562 (6th Cir. 1989); *United States v. Parker*, 165 F.Supp.2d 431, 471 (W.D. N.Y. 2001) (holding that "if the material in question is subject to the government's anticipated proof at trial, it will not be stricken regardless of the degree of potential prejudice"); *United States v. Andrews*, 749 F.Supp. 1517, 1519 (N.D. Ill. 1990) (holding that language in an indictment should not be stricken if "the targeted phrases . . . will inevitably be part of the relevant and admissible proof at trial"). Stated another way, "if the government intends to properly prove a matter at trial, then it is proper for the indictment to include those matters, even if they are not essential elements of the crime charged." *United States v. Giampa*, 904 F.Supp. 235, 271 (D. N.J. 1995) (internal quotation marks omitted). Therefore, "language in an indictment will not be stricken where, while not essential to the charges, it is in a general sense relevant to the overall scheme charged in the indictment." *Id*. at 271 72.

Although a Bill of Indictment may contain background information setting forth admissible facts, it will be the Court that instructs the jury on the applicable law. Proper jury instructions can eliminate prejudice and render the striking of surplusage unnecessary. *See Hartsell*, 127 F.3d at 353 ("Further, even if the paragraphs were unnecessary, because the district court's instruction to the jury regarding the relevant law provided the same analysis, we find no

indication whatsoever that they were prejudicial"); *Williams*, 445 F.3d at 734; *United States v. Marshall*, 985 F.2d 901, 906 (7th Cir. 1993) (finding that instruction by a trial judge that an indictment is not evidence would eliminate any prejudice in an indictment); *United States v. Walters*, 711 F. Supp. 1435, 1450 (N.D. Ill. 1989) (holding that jury instructions can effectively eliminate prejudice found in an indictment).

## III. DISCUSSION

The Defense Motion to Strike makes two arguments with respect to paragraphs 1-12, 21 and 23 of the Indictment. First that their only purpose is to inflame the passions of the jury by depicting SMITH as a terrorist. Motion to Strike at 4. Second, that the same paragraphs do not establish any element of the charged offenses. *Id*. Both of these argument are factually and legally incorrect.

The elements of the charged offenses in this case are essentially as follows:

1. On or about February 16, 2016, SMITH made certain statements, to wit: that he (a) never talked with anyone about wanting to go to Syria and join ISIS, and (b) had no knowledge of the plans of the purported ISIL fighter for whom he purchased an airline to travel from Tampa, Florida, to Buffalo, New York, en route to Syria.

2. SMITH's statements were false.

3. SMITH's statements were material to the FBI's international terrorism investigation.[1]

4. SMITH acted knowingly and willfully.

[1] The Intelligence Reform and Terrorism Prevention Act (IRTPA), enacted December 17, 2004, provides for increased penalties for violations of 18 U.S.C. § 1001 stemming from domestic or international terrorism. The term "international terrorism" as defined in 18 U.S.C. § 2331 is an element when the terrorism enhancement is charged.

5. SMITH's false statements pertained to matters within the jurisdiction of the executive branch of the United States government.

*See United States v. Sarihifard*, 155 F.3d 301, 306 (4th Cir. 1998)("A person is guilty of making false statements to a government agency when the government proves: (1) that the defendant made a false statement to a governmental agency or concealed a fact from it or used a false document knowing it to be false; (2) the defendant acted knowingly or willfully; and (3) the false statement or concealed fact or false document was material to a matter within the jurisdiction of the agency")(citing *United States v. Arch Trading Co.*, 987 F.2d 1087, 1095 (4th Cir.1993)).

Even a cursory reading of paragraphs 1 through 12 and 20 show that they are directly relevant to one or more of the elements listed above. For example, the second element of the charged offenses is that SMITH's are false. The fourth element is that he knew they were false and made them willfully. Paragraphs 1 through 11 describe how SMITH knew his statements were false. The Government will prove the facts in these paragraphs by texts, emails, and audio and video recordings of SMITH's own statements to the undercover source described in the Indictment. Paragraph 12 of the Indictment states the circumstances under which SMITH called the FBI and voluntarily agreed to the interview in which he knowingly made the false statements alleged in Counts One and Two. Paragraph 20 satisfies the jurisdictional element of 18 U.S.C. § 1001 and the basis for the terrorism enhancement also alleged in Counts One and Two.

Even if these paragraphs were not directly relevant to an element of the charges offenses, they are still properly alleged in the indictment as long as the Government is prepared to prove them at trial. As noted above, the Government intends to offer the defendant's own words to prove the facts alleged in the paragraphs the defense seeks to strike. In this regard, SMITH

seizes on the word "understood" in paragraph 1 to make the argument that Indictment improperly characterizes SMITH's state of mind. The Webster's definition of "understood" includes "fully apprehend," "agreed upon" or "implicit." In context, paragraph 1 alleges that SMITH "met and communicated with a person he understood to be a supporter of the Islamic State of Iraq and al-Sham ("ISIS"), a designated Foreign Terrorist Organization." One of the exhibits that will offered by the Government is a consensually conversation on July 14, 2014 between the Source (known to SMITH as "Abu Khalid") and SMITH in which Abu Khalid tells SMITH he is working for ISIS:

| | |
|---|---|
| ***Abu Khalid***: | Okay, I'm helping brothers to go to Syria to be with *Dawla Islam*[2] what they call it English I-S-I-S. |
| Smith: | Okay. |
| ***Abu Khalid:*** | Okay? Only in Arabic they call it DAISH, Dawla Al-Islam Fi Al-Iraq Wa Al-Sham.[3] |
| *Smith:* | Na'am.[4] |

The following conversation between SMITH and the Source on or about August 7, 2014, establishes Smith's knowledge of ISIL, and his desire to join and fight for ISIL. This fact not proves that SMITH's false statements on February 16, 2016 were made knowingly and willfully, but it also shows his motive for lying:

2 Translated from Arabic to English: "The Islamic State.
3 The Arabic acronym for The Islamic State in Iraq and the Levant a/k/a ISIL.
4 Yes.

| | |
|---|---|
| ***Abu Khalid:*** | Okay? Insha'Allah[5], so you want to be with the Khalifah[6] |
| *Smith:* | Insha'Allah |
| ***Abu Khalid***: | ...Dawla Islam?[7] You know what this mean? This mean you have to... have to bay'at[8] to Khalifah. |
| *Smith:* | Na'am |
| ***Abu Khalid:*** | [UI]… You know who is Khalifah now? |
| *Smith:* | Yes, I know who's Khalifah. |
| ***Abu Khalid:*** | What his name? |
| *Smith:* | Abu Bakr al-Baghdadi |
| ***Abu Khalid:*** | Abu Bakr al-Baghdadi |
| Smith: | Na'am. |
| ***Abu Khalid:*** | If you give bay'at to Khalifah, this mean you gonna be in the power of Dawla Al-Islam Fi Al-Iraq Wa Al-Sham.[9] You are going to fight for Allah—Subhanahu Wa Ta'alah[10]—first, but you are going to be fighting with them. |
| Smith: | Na'am. |
| ***Abu Khalid:*** | That's good with you? |

The fact that SMITH was an eager and willing ISIS recruit may not be helpful to the defense, but it is nonetheless relevant and probative of his knowledge and intent, as well as the jurisdiction of the FBI's investigation into whether SMITH was serious about providing

---

5 If God wills.
6 Caliphate, a form of government ruled by Caliph under Islamic law. Caliph is a governor of an Islamic State.
7 The Islamic State.
8 To swear an oath of allegiance.
9 The Islamic State in Iraq and the Levant a/k/a ISIL.
10 God—May he be praised and uplifted.

material support to this designated terrorist organization. Contrary to the Defense's prejudice argument, the circumstances of SMITH's involvement with Abu Khalid—who identified himself as an ISIS terrorist—is directly relevant to proving that SMITH's false statements deserve the enhanced punishment authorized by Congress in these circumstances.

WHEREFORE the United States respectfully requests that the Defense Motion to Strike Surplusage be denied.

Respectfully submitted this 13th day of March 2019.

R. Andrew Murray
United States Attorney
s/ Michael E. Savage
Assistant United States Attorney
North Carolina Bar Number 33159
Attorney for the Plaintiff
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28211
704/338-3166 (Direct Line)
704/227-0197 (Fax)
mike.savage2@usdoj.go

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all parties and counsel of record by submitting it to the Court's Electronic Filing System.

//s// Michael E. Savage
Assistant United States Attorney